# SUPREME COURT OF TENNESSEE

### FOR THE

## MIDDLE DIVISION.

### NASHVILLE, DECEMBER TERM, 1921.

### (Continued from Vol. 145).

MRS. MARY FRAZER WILLIAMS *v.* DAVID SHELBY WILLIAMS.

*(Nashville,* December Term, 1921.)

1. **HUSBAND AND WIFE.** Wife acquiescing in husband's use of income from separate estate assumed to have consented and not entitled to accounting.

Where husband and wife are living together and the income of the wife's separate estate is used by the husband through a long series of years without objection on the part of the wife, but with her knowledge and acquiescence and without the exercise of any undue influence, either for their joint purposes, living expenses, or for the husband's own purposes, the wife's consent is presumed, and she cannot .subsequently recall such consent and have an accounting, though there was an express agreement that the income was to be used for specified purposes only, this being merely a circumstance to be considered in determining whether the different use of the income was with the wife's knowledge, acquiescence, or consent. (*Post. pp.* 12-21.)

Case cited and approved: Caton *v.* Rideout, 1 Mac. & G., 599.

Cases cited and distinguished: Lishey v Lishey, 2 Tenn. Ch., 5; Rideout v. Lewis, 1 Ark., 269; Powell · Hankey, 2 P. W., 82.

(1)

2. **HUSBAND AND WIFE.** Husband managing wife's separate estate liable to account for income, but wife's right to accounting may be waived.

The fact alone that a husband took over the management and control of his wife's separate property would make him liable in law, not only for the *corpus* of the property, but to account to the wife for the income, but the wife's right to receive the income and have an accounting may be waived by dealing with him in such a way as to preclude such right. (*Post, p. 21.*)

3. **HUSBAND AND WIFE.** In wife's suit for accounting by husband, bill held sufficiently broad to cover theory on which relief sought.

In a wife's suit against her husband for an accounting with respect to the income of her separate estate, the bill, though alleging a specific agreement that the income was to be deposited in a bank to her credit, *held* sufficiently broad to embrace the theory that there was an express agreement that the income was to be devoted only to certain specified purposes such as family expenses, the education and expenses of the wife's children, and her clothing and traveling expenses. (*Post, pp. 21, 22.*)

4. **HUSBAND AND WIFE.** Casual conversations before marriage held not to limit husband's use of income in managing wife's estate.

Casual conversations between a husband and wife before their marriage in which the wife, a widow, in view of her abundant income, stated that she did not expect the husband to pay the expenses of rearing and educating her children, or the expense of her travel or clothes, but in which nothing was said about the husband managing her property, could not be considered as an express contract or agreement, limiting his use of the income of such property to the expenses specified. (*Post, pp. 22, 23.*)

5. **HUSBAND AND WIFE.** Wife held to have acquiesced in husband's expenditure of income from her separate property for any purpose.

A wife who for eighteen years permitted her husband to manage her separate property without any express understanding that he would account for the income, and permitted him to intermingle it with his own funds and pay living expenses and other expenses without reference to whether the fund was derived from his own

Williams v. Williams.

business or from the management of his wife's property, and who never demanded an accounting or objected to statements made by the husband of the property in his hands because income was not accounted for, *held* to have acquiesced in the use of the income by the husband for any purpose he deemed right and proper, and not entitled to an accounting with respect to moneys expended for purposes of his own. (*Post, pp.* 23-30.)

6. **HUSBAND AND WIFE.**   Husband's answer held to sufficiently embrace defense that wife had acquiesced in expenditure of income from separate property.

In a wife's suit against her husband for an accounting with respect to the income from her separate estate, the husband's answer *held* sufficient to cover the defense that the wife by her knowledge and acquiescence had consented to the use of the income by the husband for any purpose for which he desired to use it. (*Post, pp.* 31, 32.)

7. **HUSBAND AND WIFE.**   When wife acquiesced in husband's use of income accounting not required because of husband's breach of marital obligations.

Where a wife for many years acquiesced in the husband's use of the income from her separate estate for any purpose for which he desired to use it, no condition will be implied that he was not to give her just grounds for bringing about a legal separation, and an accounting will not be granted because the husband has broken his marital obligations. (*Post, p.* 32.)

8. **HUSBAND AND WIFE.**   Love and affection held sufficient consideration for wife's acquiescence in husband's use of income from her property.

A wife's acquiescence in her husband's use of the income from her separate property, considered as a gift, had a sufficient consideration in love and affection alone, especially where the husband was managing the wife's large estate without any compensation for his services. (*Post, pp.* 32-37.)

Cases cited and approved: Sidney v. Sidney, 3 P. Wms., 269; Gee v. Thurlow, 2 B. & C., 547; Field v. Serres, 4 B. & P., 121; Baynon v. Batley, 8 Bing., 256; McAllister v. McAllister, 57 Tenn., 345.

Cases cited and distinguished: Chase v. Phillips, 153 Mass., 17; Kinzey v. Kinzey, 115 Mo., 496; Lister v. Lister, 35 N. J. Eq., 49; Forrest v. Forrest, 9 Abb. Pr., 289; Seagrave v. Seagrave, 13 Ves., 439.

Code cited and construed: Sec. 4224 (S.)

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.— HON. JAMES B. NEWMAN, Judge.

JOHN J. VERTREES, for appellant.

CHAS. C. TRABUE and THOS. H. MALONE, for appellee.

MR. L. D. SMITH, Special Judge, delivered the opinion of the Court.

This is a case in which the wife seeks to have her husband account to her for the income and profits derived and received by him from the management of her separate estate, which she turned over to him, to manage for her as her trustee, as she claims, during a period of eighteen years, starting from shortly after their marriage in 1897 until their separation in 1915.

The chancellor upon the hearing held that the complainant was not entitled to any relief, and dismissed her bill. From the chancellor's decree she has appealed to this court.

The complainant and the defendant were married in June, 1897. At the time of the marriage the complainant was a widow, her former husband, Mr. James Frazer, having died in April, 1892. As the result of this former mar-

riage she had seven children who were living at the time of her marriage to the defendant. She was the owner of a large and valuable estate, consisting of both real and personal property, some of which she had inherited from her former husband, but most of it from her father. None of this property, however, was owned by her as a separate estate.

The defendant at the time of the marriage was a widower, having no children, but his mother and brother were regarded by him in a measure as dependent members of his family. He was a business man of mature years and high character. He held a responsible position in one of the banking institutions of the city of Nashville. He was the owner of considerable property, most of which was incumbered; its net value being something like $6,000.

The financial and social standing of the parties at the time of their marriage was fully understood by each of them. Manifestly one of the things which induced complainant to enter into the marriage with the defendant was the fact that she had this large estate, the responsibility for the management of which she herself had had since the death of her former husband and which she could intrust to the business sagacity and integrity of the defendant, and a large family of young children whose training and education could be shared by the man who had won her affections and in whose honesty and integrity she trusted.

Complainant was a sister-in-law of Judge G. N. Tillman, a prominent and highly esteemed member of the bar at Nashville. Judge Tillman, actuated by his friendship and relation to the complainant, volunteered to offer her some advice shortly before the time appointed for her marriage to the defendant. He called her attention to the

fact that her estate was not a separate estate; that her personal property upon her marriage would become the absolute property of her husband and that in case of issue born to her as the result of the coming marriage, upon the death of the husband their child or children would take one-half of her personal estate, and that in case of her death before the husband he would take it all. Whether this letter was received in the spirit in which it was written or whether the complainant in any way resented the interference of her brother-in-law in her affairs, it was shown to her intended husband, the defendant, with the result that the defendant expressed a desire not to obtain any interest in her property by reason of their marriage and as a result of this the parties entered into an antenuptial contract. This contract recited the intended and expected marriage of the parties; the fact that the complainant owned and enjoyed considerable personal property, and the desire upon the part of the defendant that she should continue to own, possess, and enjoy said personal property in the same manner as a *feme sole,* free from all rights accruing to him by virtue of the marriage and in consideration thereof the defendant released, relinquished, and renounced all rights which as complainant's husband he might acquire in and to her said personal property by virtue of the marriage, and he agreed and stipulated that she should retain and keep, possess, and enjoy all of said property as her sole and separate estate, free from and discharged of all rights he might and should acquire as her husband and free from his debts and liabilities, and conceded to her all rights, privileges, immunities, and powers incident to the ownership of said property and estate to her sole and separate use and behalf.

In the marriage contract entered into between these parties there was no reference made to the real estate owned by the complainant, nor is there any suggestion therein indicating that it was the expectation or intention that after the marriage the management and control of the complainant's property would be intrusted to the defendant either as trustee or otherwise.

Prior to their marriage, and in view of the fact that the defendant was a man of limited means and income, and that the complainant had a large family of children and occupied a high position in the society of the community, it was but natural that they should discuss to what extent the husband should contribute to the living expenses of the family. In these casual conversations leading up to their marriage the complainant stated that she had ample income to meet every need in connection with the expenses of herself and children and that she did not want or expect the defendant to be called upon to go to any expense for them or for her clothes and travel. It was stated that the defendant was not a rich man, but that he had a comfortable income, and that it should go to the support of the complainant and her family.

Under the circumstances just stated these parties were married. Soon thereafter the complainant surrendered the management of her properties to the defendant, and turned over to him her bonds, stocks, and other securities and her personal property, and he thereafter undertook to manage and control her properties, including her real estate. He received and collected the incomes derived from income-paying securities. Some of the securities were sold and converted into cash and reinvested. Real estate also was sold and converted into other character of property. Al-

together her business affairs were managed and conducted by the defendant just as he managed and conducted his own from the beginning until the final settlement shortly before the separation. In some of the transactions which he had with the property of his wife losses were sustained; in others profits were earned. There was no pretense on the part of either complainant or defendant that it was ever agreed that he should keep an accurate account of the income and profits derived and the expenditures thereof; nor that there was any specific demand for a settlement as to income and profits.

In April or May, 1915, some of the complainant's sons having married and entered upon business careers, complainant desiring to place the management of her estate in the hands of her sons, asked the defendant to turn over and surrender all of her property and the management thereof to her sons. This he did, rendering a statement, showing what he had left in his hands and what had been distributed to her children. The property thus surrendered was shown to have a value of something over $100,-000 more than it had at the time he took charge of it shortly after their marriage.

Up to this time the married life of these people had been harmonious, and nothing of a business or social nature had occurred to interfere with their happiness or in any way disturb the harmony of their relationship. However, soon thereafter, and while the complainant was visiting in New York City, she received information to the effect that her husband had been guilty of acts of adultery. After confirming in her own mind this information, and after considerable negotiations between the parties with respect to their financial relations, the bill in this cause was filed, and at the same time a bill for divorce and alimony.

The contention of the complainant is that the *corpus* of her estate was turned over to her husband to manage as her trustee for her, with the express agreement that the income so far as was necessary should be used by the trustee, but used only for certain family expenses, to-wit, maintenance, education, support, traveling expenses, and pleasures for her children, and for her own dress and travel; and that as matter of fact the income and profits derived from the management of the complainant's properties was not expended altogether in accordance with this agreement, and therefore she is entitled to have her husband account for the balance.

This contention of the complainant is based upon the following averments in the original bill:

In section 7 of the bill it is alleged that shortly after the marriage and in 1897 the complainant delivered over to the defendant all of her estate, bonds, securities, notes, obligations, and personal property of every kind, and gave over to him the management and control of her lands upon the understanding and agreement between them that he would handle, manage, look after, preserve, and invest same for her, and ultimately for the benefit of her children, and that he accepted the agency or trust, took possession and proceeds accordingly; that it was a part of the said understanding and agreement that the income and profits should be deposited in the bank in Nashville to her individual credit.

In section 12 of the bill it is alleged that the defendant had deposited money to the credit of the complainant in the First National Bank of Nashville according to the agreement, and apparently for a time deposited most of the income received, but after a few years the amount so de-

posited became less and less, except during the years when proceeds of sales of lands were deposited; that after a time the defendant's course was to deposit a portion of the money of complainants to her credit and a portion to his individual credit in the bank.

In section 13 of the bill it is alleged that, inasmuch as defendant was acting for the complainant, she had confidence in him. He represented that the money was being reinvested from time to time, and it was agreed at the defendant's request for the purpose of the trust that the defendant might check on her account the same as she did. The bank was instructed to pay all checks drawn thereon in her name by him the same as if drawn by her personally, and that many checks, thousands of dollars, were so drawn by the defendant, and the money thereon received by him.

In section 14 of the bill it is alleged that this situation continued until about April 21, 1915, that during these years complainant requested. and demanded repeatedly that the defendant render her an account of his stewardship and the condition of her estate; that he promised to do so, but did not; that he twice gave her written state-ments, showing of what her estate consisted and the value thereof, and made verbal statements from time to time as to particular investments and transactions, but never at any time denied his liability and duty to account and report.

That in April, 1915, her sons having engaged in business and become men of affairs, she requested the defendant to turn over her estate that was in his hands, and he did turn over to her the *corpus* of the estate, but that in doing so he did not deny his liability for both the *corpus* and income, or claim that he was entitled to any part thereof, and no statement was rendered when the bonds, stocks, and securities were thus delivered.

While it is alleged in the bill that the defendant is liable to account for the stocks, bonds, proceeds of real estate, income from her bonds, stocks, securities, notes, and obligations, liquidated *corpus,* rents from real estate and profits on investments in all amounting to over $900,000, it is conceded in the bill:

That most of the lands were sold during the years when the parties lived together, and converted into money, which was received by the defendant and held by him as her personal estate secured to her by the antenuptial contract, and that as matter of fact most of it was invested in other lands which complainant still owns and in bonds, securities and stocks which were subsequently delivered over to her.

That the fund which had been placed with the United States Trust Company amounted to $120,000; that the lands purchased from time to time by the defendant as complainant's agent, and in fact the entire *corpus* of the estate, has been returned to her. It is furthermore admitted that the complainant does not claim that the defendant ought to account to her for any dereliction in the performance of his duty as trustee, such as any failure to reinvest funds promptly or losses sustained in making investments.

It is also conceded that there was expended from the income some $85,000 on behalf of the complainant and her children, and that the sum of $86,000 had been spent by the defendant out of his own funds for the support and maintenance of the family and supplies furnished to the children.

Out of the entire trust funds received by the defendant from the complainant aggregating over $900,000, it is conceded that the defendant has returned property to her

and to her children, made expenditures out of same and out of his own funds to the amount of over $677,000, thus leaving a balance of something less than $250,000, which she says she is justly due from the income and profits derived by the defendant from the use and management of her separate estate. It being conceded that the entire *corpus* of the estate has been accounted for and part of the income and profits properly expended, the complainant in the brief filed in her behalf says the only question is: Shall Mr. Williams account for this surplus or balance of income?

The reason advanced by the complainant for an affirmative answer to this question is that there was a distinct agreement entered into between her and the defendant by which the defendant took the management and control of her property as trustee for her, and that the income, including the profits, should be used only for the support, education and benefit of the complainant and her children, and to defray expenses of her own dress and travel.

The defendant would have this question answered in the negative, as the chancellor answered it, for the reason that the income and profits derived from the management of the wife's estate were used by the husband for family expenses and for his own purposes with the full knowledge, consent, and approval of the complainant, and that she cannot now recall, after the lapse of many years, that consent and have an accounting.

The complainant recognizes the correctness of the principle upon which this defense is based, admitting that the income and profits devoted to family expenses are not properly chargeable to the defendant, and indeed insists that it was a part of the express agreement at the time

that such expenses should be paid from the income, but as to the balance of income and profit not thus expended but expended for the defendant's own purposes she contends that the principle is not applicable for the following reasons: First, that this defense is not sufficiently pleaded; second, that as matter of fact no part of this income was expended for his own purposes with her knowledge and consent; third, that it does not apply in cases where the funds come to the hands of the husband under an express agreement that he shall manage the wife's estate for her as trustee and devote the income to specified purposes, and that the wife was kept in ignorance of the fact that her husband was applying any portion of the income to any other purposes than those specified in the trust agreement; and, fourth, where the husband has possession and control of the wife's separate estate, under an express agreement to manage and control the same as her agent and trustee, and for her, and the wife either makes a gift of the income to him, or knowingly acquiesces in his appropriation thereof to his own personal use, it is to be taken that these gifts and donations by the wife were upon the implied condition that he was then and would remain faithful to her and his marriage vows, and that he will not at any time compel her to seek and obtain a divorce for his adultery, and, if he does, she can recover the full amount so received by him, in equity.

There can be no doubt we think of the soundness of the general principle as stated by counsel for the defense, in substance to the effect that, where husband and wife are living together and the income of the wife's separate estate is used by the husband without objection on the part of the wife, there being no undue influence exercised,

either for their joint purposes, living expenses, or for the husband's own purposes, through a long series of years, the consent of the wife is presumed from her acquiescence, and she cannot subsequently recall such consent and have an accounting with her husband.

Mr. Pomeroy in his treatise on Equity Jurisprudence, vol. 3, section 1103 (3d. Ed.), states the rule to be:

"If the wife acting without any undue influence expressly authorized or tacitly permitted her husband to receive the income of her separate property and apply it to his own uses and purposes, or to receive it and apply it for the benefit of the family it will thereby cease to be her separate property and become his, and she cannot ever recall it nor claim any reimbursement."

The same principle is stated by the author of the article on Husband and Wife in 21 Cyc., p. 1431, in this language:

"Expenditures out of the wife's separate estate made by the husband with her knowledge and consent will not render him liable to account for the same."

This is in accordance with the principle announced by Chancellor COOPER in the case of *Lishey* v. *Lishey*, 2 Tenn. Ch., 5, affirmed by this court in 6 Lea, 418, in which it is said:

"The weight of authority, in accordance with these rulings, undoubtedly is that, if the husband and wife, living together, have for a long time so dealt with the separate income of the wife as to show that they must have agreed that it should come to the hands of the husband to be used by him (of course for their joint purposes), that would amount to evidence of a direction on her part that the separate income, which she otherwise would be entitled to, should be received by him, and this if the husband be himself the trustee. *Caton* v. *Rideout,* 1 Mac. & G., 599. The

wife's consent to the husband's receipt of the income *de anno in annum* is presumed, and that such consent contiues until revoked by something expressed or fairly implied."

Chancellor COOPER quoted with approval in that case the rule laid down by Lord HARDWICKE in *Rideout* v. *Lewis*, 1 Atk., 269, as follows:

"I allow that it is a general rule, when a wife accepts a payment short of what she is entitled to, or lets the husband receive what she had a right to receive to her separate use, it implies a consent in the wife to submit to such a method, where the husband and wife have cohabited together for any time after."

Again Chancellor COOPER quoted with approval from *Powell* v. *Hankey*, 2 P. W., 82:

" . . . And, forasmuch as she had, for ten years together, permitted the husband to receive this interest without making the least objection, either to the husband or to the debtors who paid the money, or to her own trustees, it should therefore be intended that she consented to the husband's receipt of this interest; that a contrary construction might have been a hardship upon the husband, who (probably) depended upon the wife's permitting him to receive this as a gift; and, on such presumption, might have lived in a more plentiful manner, the comfort whereof the wife must have shared in; and if she, ten or twenty years afterwards, should be allowed to make her husband a debtor for all this money (which she might do by the same reason as now, after his death, to charge his executors) this might ruin the husband, or, in case of his death, prove equally prejudicial to his children."

Judge MCFARLAND, in the Lishey Case, said:

"On the other hand, if the income of the wife's separate estate be allowed, without objection, to go into the hands of the husband and is used for their joint benefit, the husband cannot afterwards be compelled to account for it. If the husband and wife have lived together and have been in the habit of jointly receiving and using the income of her separate estate, it will be presumed to have been done by her consent. She has a right to demand and enforce its payment to her, but this right may be waived, and whether it has or not will depend largely upon the relations between the parties. . . . Such consent upon the part of the wife would, under ordinary circumstances, be reasonable and proper, and if she intends to demand the interest, it would be fair that the husband should be so informed."

We recognize the principle quoted by counsel for the complainant from 21 Cyc., 1422, to the effect that— "Since rents and profits of the wife's separate estate become an additional part of her estate, where the husband collects such rents and income he will generally be presumed to have received same as her agent and trustee and therefore accountable for the same," but it is equally well settled (continuing the quotation):

"Where, however, for many years she permits him to receive and use as his own the rents of her separate property, it has been held that she cannot after his death recover them from his estate in the absence of an express or implied agreement to account for them; and her consent to his use of her income prevents her from compelling an accounting until such permission is revoked."

It is quite true that the case of *Lishey* v. *Lishey*, supra, is not on all fours with the one at bar, and is not directly

Williams v. Williams.

in point, but the reason of the rule is easily deduced therefrom. It is argued on behalf of the complainant that this rule should be limited to expenditures made for the joint benefit of the husband and wife or for family expenses. We do not think the reason of the rule required it to be so limited in its application. The reason of the rule is that it would not be equitable and just for the wife to consent to the expenditure of her money by her husband and then after the lapse of many years hold him to strict accountability for the use to which it was put. It is immaterial to what uses the husband expends his wife's income if it be done with her knowledge, consent, and acquiescence, particularly when it has been expended without any expectation or understanding that he would have to account for it, and when the expenditures have been made through a long period of years under circumstances indicating that the wife did not expect an accounting.

It is ingeniously and with much ability argued for the complainant that while this principle may be applicable with reference to income of the wife which she permitted the husband to receive as husband during the years of their marriage, such is not true in the present case, where the effort is to recover income received by the husband from the *corpus* of the wife's estate while managing and controlling it as trustee under an express agreement that he would take over the management, control, and possession of her estate and manage it for her as trustee and spend the income for specified purposes only.

This contention overlooks the very important fact that even though there exists a relationship of trustee and *cestui que trust* by virtue of an express agreement that the trustee is the husband, and that there exists the relation-

146 Tenn. 2.

ship of husband and wife between the parties. In other words, there exist reasons and considerations for the conduct of the wife in acquiescing in and permitting the expenditure of her income, where the husband is the trustee, that would not otherwise exist, and justifies the inference indulged in by courts of equity that it was the intention of the wife to make a gift to her husband. Even though there may be an express agreement on the part of the husband that the income and profits derived by him from the management of the wife's estate for her use and benefit shall be devoted only to specified purposes, or shall not be used by him for purposes of his own, yet if, notwithstanding that express agreement between them, she permits him for a long number of years to take and use the income from her property, and the same is taken and so used with her knowledge and consent or under such circumstances as that her knowledge and consent would be inferred, it amounts to an abrogation of the agreement, and will operate as a gift to the husband just the same as if she had merely permitted him as her husband to use the income which she herself was entitled to collect and receive.

Does the fact that the husband takes, uses, and appropriates to his own uses, and certain other uses, the income of the wife's separate property with her knowledge and consent determine the right of the wife to demand of her husband a repayment of the funds thus expended?

This would be so if it were directly shown that the wife did actually authorize the husband to expend the money for his own uses and purposes. And it would likewise be true where it was shown that her knowledge and her acquiescence through a long period of years, under circum-

Williams v. Williams.

stances indicating that no accounting was expected, and so as to justify the inference and conclusion that it was expressly authorized at the time, or that there was an intention afterwards that the money so expended should be a gift to the husband.

Of course if an express agreement is shown that the income was not to be used except for specified purposes, that would be a circumstance to be considered in determining whether or not a different use and purpose made of it was with her knowledge, acquiescence, or consent. But such agreement could not of itself have more effect otherwise than is to be implied by operation of law from the fact that the husband received the income from his wife's separate estate under his management of it for her.

If there were no such agreement the law would imply an agreement upon the part of the husband to account to the wife for income, and he would be under the necessity of doing so if the conduct of the parties with reference to the expenditures of the income were not such as to justify the conclusion that the expenditures made by the husband for his own use were under the authority and by the acquiescence of the wife.

The real question here is whether the use made by the husband of the wife's income to his own personal use was made under such circumstances as that it can be inferred that it was done with her knowledge and acquiescence.

We are unable to concur in the contention of fact that there was at the time the husband took over the management of this property an express agreement that the income therefrom would be expended by him only for family expenses and for the education, expense of the complainant's children, and for her dress and travel. There

was certainly no formal contract to this effect. Indeed the only evidence on the subject is casual conversations between the .complainant and the defendant prior to the time the marriage took place. The fact that Mrs Frazer had a large estate and an abundant income therefrom, while Mr. Williams was a man of moderate means and a salary not commensurate with the probable expense of living that would result from the marriage, made it but natural that they should discuss, not with a view to entering into a contract to this effect, but simply in anticipation of their mode of living and the means from which the money would come. We can easily understand how Mrs. Frazer would say:

"I have sufficient income to take care of the children and provide for their education and enough for myself; therefore you need not worry about providing for such things as traveling, dresses, and the education of and gifts to the children," —without understanding that she was endeavoring to bind her husband by a contract that he would be authorized to expend her income for no other purposes. At the time these conversations occurred it does not appear that anything was said about giving to Mr. Williams the management of her estate. It was only after the marriage that the management of the estate was given over to the husband.

Before the marriage Mrs. Frazer had received a letter from her brother-in-law, Judge Tillman, which she showed to the defendant, in which it was suggested that she convey all of her property to a trust company, to the end that the income might be paid over to her personally during her lifetime, and by this means the income from her property would not go into the husband's hands at all. The plan

suggested by Judge Tillman to the complainant was not adopted, but, on the contrary, an antenuptial contract was entered into, by which the wife's property was left in her hands and under her own control as her separate estate, and so that she herself could make such arrangement as she desired with respect to its management and with respect to the disposition of the income.

What we have just said has reference to the question of whether there was an express agreement with respect to the expenditure of the income. It is true also that there was no express agreement that would establish the relationship of trustee upon the part of the husband other than such as the law would imply from the fact that the husband took charge of the wife's property to manage it for her. We are satisfied that there was no formal agreement or understanding in connection with the giving over of the wife's property to the husband to manage that would fix any particular relationship between them with respect to the income therefrom. The fact alone that the husband took over the wife's property and its management and control would make him liable in law, not only for the *corpus* of the property, but for an accounting to the wife for the income, but this right of the wife to receive the income of her property under the management and control of her husband can, under manifest principles of equity and justice, be waived by her, and she can deal with him in such way as to preclude a subsequent right for an accounting.

It requires some mental effort to deduce the contention of the complainant that the income was to be devoted only to certain specified purposes, such as travel, dress, and expenses incident to the rearing and education of the

children; and it is doubtful whether the pleader had this contention in mind when the bill was drawn. The bill alleges that a specific agreement between the complainant and defendant with respect to. the income from her estate was had to the effect that it should be deposited in bank to her credit. Nevertheless, we believe the bill is sufficiently broad in its averments to embrace the theory now advanced, although somewhat different to that originally conceived by the pleader.

· Do the facts of this case justify the inference that there was an express agreement in the contract of these parties by which the husband could only devote the income from the wife's estate which he received from his management thereof to the limited purposes specified? Was the money which the husband derived from the wife's estate expended by him in such way and under such circumstances as to imply that he had her authority therefor? Was it done with her knowledge and acquiescence so as to imply a gift thereof to the husband? These questions we think are easily answered by a consideration of the circumstances surrounding the various transactions involved.

There is an absence of proof that there was any specific or express understanding or formal agreement entered into by the parties at the time the defendant took over the management and control of his wife's property. Evidently the wife desired to be relieved of the burden of looking after it herself, and the business ability and integrity of her husband was such as that she confided the management of her estate to him without making any demand or having any understanding with respect to the specific expenditure of the funds. The only evidence of any specific agreement relied upon is to be found in the casual conversations of

the parties before the marriage, related some twenty years thereafter, in which it was stated by the complainant that she did not expect the defendant, in view of her abundant income, to pay the expenses of rearing and educating her children or the expense of her travel or clothes. These conversations, we think, cannot be considered to be an express contract or agreement limiting the expenditure of the wife's income, and be coupled up with the fact that the management of her estate was subsequently turned over to her husband.

During the early part of the married life of these parties the income received by the husband was deposited to the complainant's credit in the bank and by an express agreement with the complainant the defendant drew upon her account by signing her name to the checks. Subsequently funds derived from the wife's estate in the hands of the husband with the wife's knowledge were deposited to his own account, part of the funds to his account and part to the wife's account, and during the entire period of their married life this fund was drawn upon and used by the defendant with full knowledge of that fact on the part of the wife. There was no express understanding that the defendant was to render to the complainant any statement or account of the expenditures made by him out of this fund. No accurate account was kept of it. No specific demand was ever made by the complainant upon her husband to render an accounting to her of the expenditure of this fund. It was indiscriminately intermingled with his own funds and living expenses, and other expenses were paid without reference to whether the fund was derived out of his own business or out of the income from the management of his wife's property. No effort

was made to separate his funds from hers, except that there was supposed to be always on deposit to her credit sufficient funds upon which she could draw to meet all of her requirements, and with the understanding that her checks would always be taken care of regardless of whether her account in bank was overdrawn.

This method adopted by the defendant in the conduct of his wife's business and expending her income was never seriously complained of by the wife. She testifies that on two or more occasions she did complain of not having sufficient funds to carry out some of her plans and at a transaction (wherein the defendant purchased cattle for the dairy, but when the necessity for expending this money was explained to her she acquiesced in it, and never had at any time demanded of the defendant that he render to her an accounting of the expenditures which he had made from the income or profits derived by him from the management of her separate estate.

He did at different times after 1910 render statements to his wife, showing the condition of her estate, particularly setting forth the property in which it had been invested and which he held for her.

In December, 1910, defendant made a written statement to complainant as to her estate in his hands. It contained a list of securities and properties belonging to her which he had at that time, aggregating something like $500,000. It was prepared and furnished to complainant as a written statement of her affairs. It included no statement of income and profits which the defendant had received from the management of the estate, nor did it undertake to account for the expenditures thereof.

On the 8th of June, 1911, defendant executed a written memorandum to the effect that he had in his possession shares of stock in different corporations which were the sole and separate property of his wife. In this memorandum it was stated:

"The said stocks are listed or recorded in a book which is kept in Mrs. Williams' private box in the First National Bank. The said stocks as sold and as bought are recorded in the book. The purpose of keeping the book is that it shall faithfully keep and reflect the record of the transactions as they occur of the stocks as held by me and in my name. I make this statement in order that in case of my death or any other accident that may befall me there shall be no doubt of the title and interest in said stocks."

This statement, containing as it does no account of the income and profits received or expended, indicates upon its face that there was no intention that this income should be considered and treated as the wife's property or be accounted for.

On December 23, 1912, defendant rendered a statement to the complainant under the heading "Statement of Stocks and Bonds and Real Estate, Property of Mrs. Williams, Stock in the Name of D. S. Williams." This statement contains a list of all the stocks and bonds and real estate, and shows the numbers of the bonds and shares of stock and the value thereof and the income therefrom. The total value of the property is shown to be $563,608.73. The income shown to be $21,966.63. This statement upon its face does not show what period of time is covered by the income figures thereon, but it is reasonable to infer from the testimony that the figures represent the annual income derived from the properties listed. This statement

contains no reference to the expenditure of income that had been derived from the estate up to that time, and from this it is to be inferred that the income was not to be taken into account in the statement showing the separate estate of the wife in the hands of the husband.

In April or May, 1915, some of the complainant's sons having married and entered upon business careers, and complainant being desirous of placing her estate in the hands of her sons, called upon the defendant to surrender and turn over to her the property and the management thereof. This he did, rendering a statement at the time showing what he had left in his hands and what had been disbursed to her children. The property thus surrendered was itemized and shown to have a value of something more than $100,000 than the property had which he took charge of shortly after their marriage. This statement did not embrace any income, nor undertake to account for any income received by the husband from the wife's property, nor account for its expenditure. Apparently nothing was said about it at that time, nor when any of these other statements were rendered, and it is quite manifest and apparent that the wife considered that the income had either been reinvested or properly expended.

These statements which had been rendered showed the fact, which was evidently well known to the complainant, that her estate had been well and judiciously managed by her husband, and having confidence and faith in his honesty, integrity, and business capacity she never at any time for one moment questioned the expenditures made by the husband from the income and profits derived from her estate in his hands.

Williams v. Williams.

Not only did the wife expressly authorize the husband to draw upon her account in bank where her income or a portion thereof had been credited, but his practice in doing so was well known to her, as all the checks were turned over to her. She was a business woman. She had had experience in the management of her own estate prior to her marriage with the defendant. She had accurate information as to the value of her estate and the amount of her income. She knew that their manner of living was an expensive one, and she could not have been ignorant of the fact that no differences were being made by the husband in the expenditure of money between his own funds and hers. He was earning money by way of salary and trading. Living expenses and other expenses were paid by him indiscriminately out of his own funds and out of funds derived from profits and income of his wife's property. Not only during this period of eighteen years was no demand made on the defendant for an accounting, but no complaint was registered as to the method in which her affairs were being handled by the husband, except on one or two occasions when it seems she did not have sufficient funds available to meet some particular need at the time.

The complainant in her brief admits that— "No specific demand for an accounting or showing for his [Mr. Williams] expenditures of income or profits was made by Mrs. Frazer until after the estrangement and separation, and no objection was offered by her to the statement of December 31, 1910, or December 23, 1912, because of the omission therefrom of such a showing."

The fact is that no objection was ever made by the complainant to the statement rendered in April or May, 1915,

because of the omission therefrom of an accounting for the expenditure of income and profits derived from her separate estate.

This method of dealing with the income from the complainant's estate by the husband continued for a period of some eighteen years, and it must be apparent therefrom that the complainant permitted the use of this income by the husband without there being any understanding or agreement that it was to be expended only for certain purposes, and that there was no specific understanding that he was to render to her any account of expenditures made by him out of said income.

Indeed, it is not seriously contended by the complainant in her brief that the defendant would be liable for an accounting but for the fact of their having had an express agreement to the effect that it was only to be expended for certain purposes, and that she was misled into believing that it had been expended for those particular purposes. In this respect it is said in her brief:

"It is true that Mrs. Frazer made no such demands as referred to by the chancellor, and we believe it to be equally true that at the time the *corpus* was turned back Mrs. Frazer did not have any thought of requiring an accounting of the expenditure of her income by Mr. Williams."

The conclusion thus stated by complainant's counsel is an unavoidable one from the facts proven in this case; hence it is said, "But her silence at that time on the subject was due to the fact that she believed she was correctly informed as to the expenditure, and therefore did not disapprove of them," and contended for her that she was misled by reason of her confidence in her husband that

he had only expended this income for the purposes speci-
fied in the alleged agreement entered into at the beginning,
and that she had been kept in ignorance of the fact that
any of it had been otherwise expended.  It is significant
that this contention of the complainant is not specifically
brought forward in her original bill.  There is no averment
in her bill of an express contract to the effect that the
income was only to be expended for certain purposes; nor
is there any averment that there was any ignorance upon
her part, or that she had been misled with respect to the
fact that the income had been expended in violation of any
such agreement.  Nor does she anywhere testify that she
was ignorant of the purposes for which her husband had
expended this fund.  Indeed she could not very well do
so, in view of the fact that hundreds of checks drawn in
her name by her husband showed that this fund was being
used by the husband generally, and in some instances spe-
cific knowledge is shown upon her part of the expendi-
tures out of this fund for the personal uses of the defend-
ant.  She does not even testify that she believed that her
income was being expended only for living expenses in ac-
cordance with her alleged understanding agreement at the
start.  It is argued that she believed it, and this argument
is based almost altogether upon an averment found in the
defendant's answer to the effect that this income was large-
ly expended in payment of living expenses, and the testi-
mony of the defendant to the same effect.  We think it is
undoubtedly true that the complainant did not have knowl-
edge of all of the expenditures made by her husband, but
it is also true that she never inquired into the details of
the transactions of which she did not have knowledge of
the purposes of such expenditures, but she did know that

he was drawing upon her account and using it in his business, and we are forced to the conclusion that she really had no concern about it, being entirely willing that her husband might use it in such way as he deemed right and proper.

That the wife, with this knowledge of how the husband was dealing with her income, acquiesced therein, and intended that her husband should not be called upon for an accounting thereof, is further evidenced by the fact that her husband had made a will in which practically everything he had was given to her, and that she had made a will in which she had made bountiful provision for the husband. His income, her income, his property, and much of her property were treated and considered by them as belonging to both of them, and the record conveys the irresistible conclusion that there was never any expectation upon the part of the wife that her husband should account to her at any time for any portion of the income which he had received and expended.

Under these circumstances to permit the wife to now have an accounting of the expenditures of her husband of her income running through a period of eighteen years, when no accounts have been kept by either with this end in view and records of transactions are lost or destroyed, and after acquiescence by the wife in the expenditure of this fund and the knowledge that she had thereof, and in view of his having turned over to her an estate largely increased in value, even added to it bonds of his own which he was under no obligation to do, would be inequitable and unjust at this time, even though the changed attitude of the complainant with respect to her husband has been brought about by his fault.

Williams v. Williams.

· It is contended that the defendant cannot have the benefit of this equitable principle in its application to funds expended for his own personal uses because in his answer he has not set up that defense. In considering this question it must be borne in mind that the original bill did not allege an agreement limiting expenditures of the income. But, treating the bill as having that effect, we concur with the views of the chancellor that the defense is amply covered by the pleadings, and adopt what he said on that subject as expressing our views:

"It is said by the complainant that the answer does not affirmatively plead that she ever gave him any of the income, or authorized him to appropriate it to his own personal use, and that he does not affirmatively plead as a defense that he is not obligated to account.

"In paragraph 7 of the answer, it is said:

" 'But he, on various occasions, deposited said income and profits to his own account, all of which was done with the full knowledge, consent, and approval of the complainant.

" 'There was no understanding and contract as to the income, but the same was used and spent freely, and without thought of an accounting, as is usual between husband and wife.'

"And again, in paragraph 13 of the answer, it is said: 'The complainant knew fully that the respondent was checking on her account, and this was done with her knowledge, consent and approval throughout the years of their married life, without any special agreement or without any limitation imposed on his right so to do.'

"Again in paragraph 20, it is said:

" 'Respondent denies that he owes the complainant anything, either in law or morals, on account of *corpus,* or income, or profits.'

"Again, in paragraph 21:

" 'If she had ever wished to question the right of respondent to use this income or 'profits' either for family living or for his own private purposes, she was free to do so. To wait until important witnesses are dead, and until it is almost impossible to explain items which occurred so many years ago, as in the present case, work such a hardship on the respondent that no such suit can or ought to be maintained.' "

It is contended again for the complainant that a court of equity will not refuse to open an accounting between husband and wife under the circumstances indicated, where subsequently thereto the husband has been guilty of conduct compelling a legal separation. The theory of this contention is that there must be implied in the wife's acquiescence and consent to the expenditure by the husband of the income of her estate a condition that he will never thereafter give her just grounds for bringing about a legal separation, and that by reason of the husband's adultery the wife is entitled to an accounting which a court of equity would not otherwise give her.

We are unable to concur with the learned counsel in this ingenious argument. We believe it is neither sound in principle nor sustained by authority. Considered as a gift there is ample consideration upon which to base the expenditures made by the husband for his own purposes and uses out of the wife's income. Love and affection alone is a sufficient consideration for the gift. The husband was managing this large estate for the wife without any com-

pensation for his services.  Its value was being constantly
increased.  They were living a life of luxury, ease, and com-
fort without anticipation of domestic differences.

A court of equity will not disturb transactions covering
a long period of time had under circumstances such as
these because finally one or the other of the married par-
ties fell down upon their marital obligations.  It does not
necessarily follow that when one makes a gift to another
it is with the understanding that neither will ever in the
future make a serious mistake and one that cannot be re-
paired.  It is always within the range of probabilities that
should the husband or wife commit an offense justifying
separation condonation and pardon may take place.  It
cannot be read into a gift that the beneficiary thereof will
always remain true and loyal.  The past relationship shown
in this case affords ample consideration for the gift.  While
complainant was under neither moral nor legal obligation
to condone the offense of her husband, it is within the
range of human experience and not at all contrary to good
morals nor opposed to the divine law.

The law provides another means and another remedy,
and one which this complainant has resorted to to afford
to the outraged spouse all the redress deemed commensu-
rate under our laws based upon human experience in affairs
of this kind.

We are not dealing with the case where the gift was ob-
tained through imposition, fraud, or deceit.  The most that
can be said in favor of the complainant's contention is
that when she permitted the expenditure of her income by
her husband she was simply mistaken in the strength of
his morality and his ability to withstand the temptations
of life.  At most it was a mistake in judgment, the conse-

146 Tenn.—3.

quences of which a court of equity cannot undertake to relieve, in the absence of fraud, and in the presence of ample consideration to justify the gift. This result, we think, follows upon the plainest principles of equity, and is sustained by ample authority.

A few of the decided cases may be mentioned. *Chase* v. *Phillips,* 153 Mass., 17, 26 N. E., 136. In that case the wife had made a trust deed settling property on her husband. Subsequently she was granted a divorce from him on the ground of adultery, and sought to set aside the trust deed on that ground. The supreme court of Massachusetts declined to set it aside, saying:

"With regard to the defendant's adultery, committed, it would seem, after his wife deserted him, the deed expresses no condition that he should continue chaste, and we see no reason for reading one into the instrument."

*Kinzey* v. *Kinzey,* 115 Mo., 496, 22 S. W., 497, 20 L. R. A., 222. In that case the husband had made gifts to his wife at a time when there was nothing to disturb their happiness. Subsequently she entered into relations which resulted in his obtaining a divorce for adultery. After the husband's death his administrator sought to recover the property which had been given to the wife. In that case it was held that the adultery of the wife would not operate as a forfeiture of any of her rights in the property because those rights had become vested. In that case it was said by the court:

"But counsel for appellant seem to contend that this case is one calling for the interposition of a court of equity in the interest of morality, upon some theory of fraud to be deduced from the premises by reason of the confidential relations existing between husband and wife; a fraud not

constructed upon the theory of any fraudulent act done, or representation made by the defendant inducing the conveyance of the property to her, but simply upon a breach of the confidence that the plaintiff then had that the defendant was and would continue to be to him a faithful wife. . . .

"A court of equity can and will interfere to restore to a party injured, property which has been obtained from him by imposition or deceit. But in this case no property was obtained from plaintiff by imposition or deceit. He was simply mistaken in the moral worth and virtue of one of the objects of his bounty. From the consequence of such a mistake of judgment, a court of equity cannot relieve."

*Lister* v. *Lister*, 35 N. J. Eq., 49. In this case the husband who had given valuable real estate to his wife, after securing a divorce from her on grounds of adultery, filed a bill to recover property. The bill was dismissed by the court, the court saying:

"Nor can any relief be granted on the ground that the defendant has been guilty of adultery, and the complainant has been divorced from her for that cause. In this connection, it is urged that to permit the defendant, who has been guilty of infidelity towards the complainant, who, for that cause, has by law been divorced from her, not only to deprive him and their children of all benefit of the property in question, but with it, to live, perhaps in luxury, with the partner of her guilt, is contrary to equity, and is a wrong for which equity will find a remedy.

"But that is no ground for relief. In *Dixon* v. *Dixon*, 8 C. E. Gr., 316, it was held that a conveyance made by a husband to a trustee, for the use of his wife, on the execution of articles of separation between them, would not be

set aside on account of the subsequent adultery of the wife, while living apart from her husband. See, also, s. c., 9 C. E. Gr., 133. The adultery of the wife has been held to be no defense to a suit for specific performance of marriage articles. *Sidney* v. *Sidney,* 3 P. Wms., 269. In a suit for an annuity under an agreement of separation between husband and wife, a plea of subsequent adultery of the wife and a consequent divorce was held bad." *Gee* v. *Thurlow,* 2 B. & C., 547; *Field* v. *Serres,* 4 B. & P., 121; *Baynon* v. *Batley,* 8 Bing., 256.

See also, *Forrest* v. *Forrest,* 9 Abb. Pr., 289.

"In *Seagrave* v. *Seagrave,* 13 Ves., 439, there was a separation between husband and wife on account of the adultery of the latter, and a bond was given the husband for the support of the wife, and it was held, on bill filed by the wife, that the fact that she had subsequently been guilty of adultery did not disentitle her to relief."

There can be cases found in which gifts of specific property have been set aside on account of the misconduct of one or the other of the parties. We believe such cases are based alone upon misrepresentation, fraud, or deceit, and no case has been cited to the court justifying an accounting of expenditures running through a long period of years to disturb the acquiescence and consent of one of the parties in the funds of the other and thereby establishing a gift. The case of *McAllister* v. *McAllister,* 10 Heisk., 345, is cited as authority for this contention of the complainant. That was a divorce case involving the question of alimony. The husband had induced his wife to convey her real estate to him, and the court, in passing upon the question of alimony due to the wife from the fault of the husband, gave this particular property to the wife under the

provisions of section 2471 (Shannon's Code, section 4224), thereby regarding the land as the property of the wife and restoring it to her as required by the statute. The court said:

"Although the legal title be vested in defendant, yet, in a court of equity, as between husband and wife, we must regard the latter as the real owner. We cannot sanction the means by which he obtained the title."

The opinion of the court in that case does not set forth just what the means were by which the husband acquired legal title to the property. It was evidently under circumstances of which the court did not approve. The court certainly did not set aside a gift because of subsequent misconduct of the husband. The court was only endeavoring, through means provided by statute on the subject of alimony, to compensate the wife and restore her to the situation which she occupied before the misconduct of the husband. We are unable to give our assent to the doctrine made the basis of the complainant's contention in this respect.

It follows from what we have said that we concur with the conclusion reached by the chancellor, and his decree will be affirmed, and the complainant's bill will be dismissed, with costs.